UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW FINE,                                    )
                                                 )
    Plaintiff,                        )
                                                 )
      v.                      )     Case No. 3:19-cv-30067-KAR
                                                 )
THE GUARDIAN LIFE INSURANCE                      )
COMPANY OF AMERICA & PARK                        )
AVENUE SECURITIES, LLC,                          )
                                                 )
    Defendants.                       )


MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS
(Docket No. 9)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

Matthew Fine ("Plaintiff") sold insurance products as an agent of The Guardian Life

Insurance Company of America ("Guardian") and Park Avenue Securities, LLC ("PAS")

(collectively, "Defendants"). In the aftermath of Defendants' termination of Plaintiff's

employment, he brought an action for breach of the implied covenant of good faith and fair

dealing (Count I) and unjust enrichment (Count II). Defendants have moved to dismiss

Plaintiff's claims (Dkt. No. 9). The parties have consented to this court's jurisdiction. *See* 28

U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, Defendants' motion is DENIED.

II.     FACTUAL BACKGROUND[1]

---

[1] Unless another source is cited, the facts are drawn from the Complaint (Dkt. No. 1), Guardian's
Field Representative Agreement (Dkt. No. 11-1 at 4-6), and PAS's Registered Representative
Agreement (Dkt. No. 11-1 at 8-17), which are referenced in the Complaint and are central to
Plaintiff's claims. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Guardian, a company which was organized under the laws of New York, provides life, disability, and other insurance products to clients in the United States (Dkt. No. 1 ¶ 5). PAS, a limited liability company organized under the laws of Delaware with its principal place of business in New York, is a wholly owned subsidiary of Guardian (Dkt. No. 1 ¶ 6).

On December 16, 1997, Guardian hired Plaintiff as a Field Representative (Dkt. No. 1 ¶ 9). Plaintiff and Guardian executed a Field Representative Agreement ("FRA"), which provided the terms of Plaintiff's compensation (Dkt. No. 11-1 at 4 ¶¶ 4, 5). The FRA indicated that nothing contained in the agreement "shall be construed to create the relation of employer and employee between [Plaintiff and Guardian]" (Dkt. No. 11-1 ¶ 3). The FRA terminated "immediately . . . if the Field Representative . . . commit[ted] a fraudulent, immoral or dishonest act . . . or fail[ed] to comply with [Guardian's] rules and regulations" (Dkt. No. 11-1 at 5 ¶ 14). In addition, the FRA provided:

> [e]ither party may voluntarily terminate this Agreement at any time by written notice addressed to the other, to become effective not earlier than two weeks from the date of delivery. . . . On termination, [Guardian's] liability for remuneration of any kind shall cease except as set forth in the Field Representative Plan.[2]

(Dkt. No. 11-1 at 5 ¶14). The FRA further stated: "In all disputes arising under this agreement between the Field Representative and [Guardian], the Laws of the State of New York shall apply" (Dkt. No. 11-1 at 5 ¶ 16).

PAS hired Plaintiff as a Registered Representative on December 13, 2000 (Dkt. No. 1 ¶ 9). As relevant here, the Registered Representative Agreement ("RRA") established Plaintiff's

---

[2] Because the Field Representative Plan is not referenced in the complaint or central to Plaintiff's statement of his claims, it is not considered by the court. *See Watterson,* 987 F.2d at 3.

compensation[3] and stated that Plaintiff was an "independent contractor," that "[e]ither party may terminate th[e] Agreement at any time upon ten (10) days written notice, specifying the effective date of termination, to the other party," and that the "Agreement will be governed by the laws of the State of New York, without giving effect to the conflicts of law principles thereof" (Dkt. No. 11-1 at 12 ¶ 29, at 14 ¶¶ 45, 48, and at 16 ¶ 63).

During Plaintiff's tenure with Guardian and PAS, he sold approximately 1,800 insurance policies while working in Framingham, Massachusetts (Dkt. No. 1 ¶ 12). He received an annual salary, commissions, and renewal commissions ("renewals") from the Guardian equity, disability, and life insurance products that he sold (Dkt. No. 1 ¶¶ 1, 14, 15). Plaintiff earned renewals in excess of $150,000 to $300,000 per year (Dkt. No. 1 ¶ 53).

On May 1, 2018, Plaintiff traveled to Washington, D.C. to attend a required Guardian conference that was scheduled to begin on May 3, 2018 (Dkt. No. 1 ¶ 27). Plaintiff arrived two days early to play golf (Dkt. No. 1 ¶ 28). Before the conference began, Plaintiff engaged in "consensual sexual activity" with a woman who was attending an unrelated conference at Plaintiff's hotel (Dkt. No. 1 ¶ 29). The hotel staff awakened Plaintiff at 3:00 A.M. and informed him that the woman's male co-worker had accused Plaintiff of sexual misconduct (Dkt. No. 1 ¶¶ 30, 31). The hotel's policy required its staff to notify the police (Dkt. No. 1 ¶ 32). After the police investigated the complaint, Plaintiff was not charged with a crime (Dkt. No. 1 ¶¶ 2, 32, 33). Guardian prevented Plaintiff from attending the conference (Dkt. No. 1 ¶ 34).

---

[3] The PAS/GIAC Commission Assignment Form, which is referenced in the portion of the RRA addressing compensation, is not included in the record (Dkt. No. 11-1 at 12 ¶ 29). *See Watterson,* 987 F.2d at 3.

Plaintiff received a termination letter on May 8, 2018, which stated that "his termination will be effective May 22, 2017" (Dkt. No. 1 ¶¶ 35, 36).[4] After Plaintiff repeatedly pressed Guardian to state a reason for his termination, its employees stated that they had "'lost faith'" in him (Dkt. No. 1 ¶¶ 2, 40). Plaintiff had not received a complaint or bad review during his twenty year tenure with Defendants (Dkt. No. 1 ¶ 1). On the Financial Industry Regulatory Authority ("FINRA") Form U5, which notified FINRA that a registered representative's license to sell securities was terminated, Defendants did not indicate that Plaintiff had engaged in wrongdoing (Dkt. No. 1 ¶¶ 45, 46).

### III.    LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D. Mass. Jan. 9, 2020). In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). "In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ngomba,* 2020 WL 107969, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[L]abels and [legal] conclusions, and a formulaic recitation of the elements of a cause of action .

---

[4] Whether or not the date stated in the complaint is a typographical error is not clear. However, the date stated in the termination letter is inconsequential to the resolution of the motion to dismiss.

. . ." are insufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief." *Ngomba,* 2020 WL 107969, at *2 (citing *Iqbal,* 556 U.S. at 679). !

IV.    ANALYSIS

A.    Count I:  Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing by terminating his employment without good cause and with the purpose of retaining his earned renewal commissions (Dkt. No. 1 ¶¶ 55, 56). In the alternative, Plaintiff claims that Defendants terminated him in good faith but without good cause, which resulted in him losing "reasonably ascertainable future compensation based on his past services" (Dkt. No. 1 ¶ 57). Although the FRA and RRA contain choice-of-law provisions stating that New York law applies to disputes "arising under the agreement[s]" and although Defendants contend that those provisions control, Plaintiff disputes the application of New York's substantive law (Dkt. No. 11-1 at 5 ¶ 16 and at 16 ¶ 63). Plaintiff contends that the court should apply Massachusetts law because the application of New York law will violate Massachusetts' policy (Dkt. No. 17 at 7-8 & n.2). Plaintiff's contention is persuasive.

1.    Choice of Law

Notwithstanding Plaintiff's claim that "[h]is entitlement [to compensation] is a matter of law, not contract," the remedy that he seeks arises under the terms of the FRA and RRA that provides for the payment of renewal commissions (Dkt. No. 11-1 at 4 ¶ 5 and at 12 ¶ 29; Dkt. No. 17 at 6). *See Petricca v. City of Gardner,* 429 F. Supp. 2d 216, 224 (D. Mass. 2006) (absent evidence of a contractual relationship between the parties, plaintiff's claim for a breach of the

covenant failed as a matter of law); *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667, 684 (Mass. 2005) ("The scope of the covenant [of good faith and fair dealing] is only as broad as the contract that governs the particular relationship."). *Compare Comput. Sales Int'l v. Lycos, Inc.*, No. Civ.A. 05-10017-RWZ, 2005 WL 3307507, at *3 (D. Mass. Dec. 6, 2005) (the contract's choice-of-law provisions did not apply because "the 'bulk of [plaintiff's] allegations involve[d] conduct . . . unrelated to the contract's terms'") (quoting *Bay State Anesthesia v. Mallinckrodt, Inc.,* No. CIV.A. 02-1117RWZ, 2002 WL 31761286, at *1 (D. Mass. Dec. 6, 2002)). Consequently, the court must determine whether to enforce the choice-of-law provisions in the agreements by applying New York law. [5]

"Although the [c]ourt could 'choose[ ] to forgo independent choice of law analysis and accept the parties' [contractual] agreement' that [New York] law applies, the [c]ourt instead chooses to analyze choice of law independently because doing so furthers justice." *Auctus Fund, LLC v. Sunstock, Inc.*, 405 F. Supp. 3d 218, 226 (D. Mass. 2019) (citing *Shay v. Walters*, 702 F.3d 76, 80 (1st Cir. 2012) (quoting *Borden v. Paul Revere Life Ins. Co.,* 935 F.2d 370, 375 (1st Cir. 1991)). "'A federal court sitting in diversity evaluates contractual choice of law provisions according to the rules of the forum state, here Massachusetts." *NPS LLC v. Ambac Assurance Corp.,* 706 F. Supp. 2d 162, 168 (D. Mass. 2010) (citing *Mariasch v. Gillette Co., 521 F.3d 68,*

---

[5] Plaintiff also argues that the FRA and the RRA are void in their entirety because he was an employee, not an independent contractor as stated in the agreements (Dkt. No. 17 at 7-8). For purposes of the motion to dismiss, Defendants do not dispute Plaintiff's status as an employee-at-will (Dkt. No. 18 at 8-9 & n.5). Even if Plaintiff was an employee instead of an independent contractor, the severability clauses of the FRA and the RRA preserve the remainder of the contracts' terms including the choice-of-law provisions (Dkt. No. 11-1 at 6 and at 16 ¶ 64). *See Paradise v. Eagle Creek Software Servs., Inc.,* 989 F. Supp. 2d 132, 140 (D. Mass. 2013) (where the terms of an agreement allow for severance, the offending provision will be severed and the balance of the agreement will be enforced).

71 (1st Cir. 2008)). *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941);

*Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe) Ltd.,* 633 F.3d 50, 54 n.7 (1st Cir. 2011). "The

[c]ourt must analyze the law that applies to each claim independently." *In re GlassHouse Techs.,*

*Inc.,* 604 B.R. 600, 614 (Bankr. D. Mass. 2019).

"The first step in a choice of law analysis is to determine whether an actual conflict exists

between the substantive laws of the interested jurisdictions." *Reicher v. Berkshire Life Ins. Co.*

*of Am.,* 360 F.3d 1, 4 (1st Cir. 2004). *See Auctus Fund, LLC*, 405 F. Supp. 3d at 226 ("Before

deciding which law to apply, Massachusetts courts 'consider whether the choice between the

laws of the involved jurisdictions will affect the legal result.'") (quoting *Lou v. Otis Elevator Co.*,

933 N.E.2d 140, 150 (Mass. App. Ct. 2010)). "Under both New York and Massachusetts law, a

covenant of good faith and fair dealing is implied in every contract." *HDI-Gerling Am. Ins. Co.*

*v. Navigators Ins. Co.,* Civil Action No. 15-10338-FDS, 2015 WL 5315190, at *5 (D. Mass.

Sept. 11, 2015) (citing *Harris v. Provident Life & Acc. Ins. Co.,* 310 F.3d 73, 80 (2d Cir. 2002);

*UNO Rests. Inc. v. Boston Kenmore Realty Corp.,* 805 N.E.2d 957, 964 (Mass. 2004)). "In

Massachusetts [and New York], the covenant provides that 'neither party shall do anything that

will have the effect of destroying or injuring the rights of the other party to receive the fruits of

the contract.'" *Id.* (quoting *Anthony's Pier Four, Inc. v. HBC Assoc.*, 583 N.E.2d 806, 820 (Mass.

1991)). *See Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 455 (E.D.N.Y. 2017) (citing

*Harris,* 310 F.3d at 80). "Hence, the covenant is violated 'when a party to a contract acts in a

manner that, although not expressly forbidden by any contractual provision, would deprive the

other of the right to receive the benefits under the agreement.'" *Echostar DBS Corp. v. Gemstar-*

*TV Guide Int'l, Inc.*, No. 05 Civ. 8510 (DAB), 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007)

(quoting *Don King Prods., Inc. v. Douglas,* 742 F. Supp. 741, 767 (S.D.N.Y. 1990)). *See*

*Christensen v. Kingston Sch. Comm.,* 360 F. Supp. 2d 212, 226 (D. Mass. 2005). "The implied covenant does not . . . operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits." *Don King Prods., Inc.,* 742 F. Supp. at 767 (citations and internal quotations omitted). *See Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 187 F. Supp. 3d 217, 223 (D. Mass. 2016) ("Although the implied covenant cannot broaden the scope of the contract or add new terms, rights or duties to it, a party can violate the implied covenant of good faith and fair dealing without breaching the terms of the contract so long as it destroyed or injured the right of the other party to receive benefits under the contract") (internal citation omitted). Because Plaintiff seeks to recover for a breach of the covenants of good faith and fair dealing, which are implied in the FRA and the RRA, he is not attempting to "override the express terms of his contracts" as Defendants contend (Dkt. No. 18 at 11).

There is no dispute that Plaintiff was an at-will employee (or an at-will independent contractor) under the terms of the FRA and the RRA. [6] According to Massachusetts and New York law, an at-will employee's employment relationship with his or her employer may be terminated by either party at any time without reason. *See Suzuki v. Abiomed, Inc.*, Civil Action No. 16-12214-DJC, 2019 WL 109340, at *8 (D. Mass. Jan. 4, 2019), *aff'd,* 943 F.3d 555 (1st Cir. 2019); *Gill v. Pathmark Stores, Inc.,* 655 N.Y.S.2d 623, 624 (N.Y. App. Div. 1997).

---

[6] There is no distinction between an independent contractor and an employee-at-will as to the issues presently under consideration. *See Trent Partners & Assoc., Inc. v. Digital Equip. Corp.,* 120 F. Supp. 2d 84, 99, 101 & n.18 (D. Mass. 1999) (an implied covenant of good faith and fair dealing protects independent contractors at will and employees-at-will "in situations where the purpose of the termination was to deprive the employee of an identifiable, future benefit due for particular past service.").

The states' laws differ, however, as to the theories under which a terminated at-will employee, such as Plaintiff, can recover for a breach of the covenant of good faith and fair dealing. !

> Massachusetts law recognizes a breach of the implied covenant of good faith and fair dealing in two limited circumstances involving termination of at-will employees: "(1) when an employer terminates an employee to avoid payment of future expected compensation for past services or expected benefits (the financial benefit prong) or (2) when employment was terminated contrary to a clearly established public policy."

*Serabian v. SAP Am., Inc.,* Civil Action No. 16-cv-10501, 2018 WL 1041540, at *4 (D. Mass. Feb. 23, 2018) (quoting *Wong v. Resolve Tech.*, Civil Action No. 10-11642-DJC, 2011 WL 3157198, at *6 (D. Mass. July 25, 2011)); *see also Shen v. Biogen Idec Inc.*, 523 F. Supp. 2d 48, 54 (D. Mass. 2007); *Glaz v. Ralston Purina Co.,* 509 N.E.2d 297, 299 (Mass. App. Ct. 1987). Under the financial benefit prong, Massachusetts provides two theories of recovery for an at-will employee who is terminated and alleges denial of compensation for past service. The Supreme Judicial Court ("SJC") articulated the first theory in *Fortune v. Nat'l Cash Register Co.,* 364 N.E.2d 1251, 1257 (Mass. 1977). According to *Fortune,* "[w]here termination occurs for the purpose of depriving the employee of benefits or compensation due or forthcoming at the time of discharge, the termination is considered to have been rendered in 'bad faith' and the covenant is, therefore, considered to have been breached." *Suzuki,* 2019 WL 109340, at *8 (citing *Fortune,* 364 N.E.2d at 1257). Four years later, the SJC expressed the second theory in *Gram v. Liberty Mut. Ins. Co. (Gram I),* 429 N.E.2d 21, 28-29 (Mass. 1981). "In [*Gram*], the SJC extended the *Fortune* doctrine to circumstances in which an at-will employee is discharged without good cause (but absent any showing of bad faith)." *Suzuki*, 943 F.3d at 562. "Although termination of employment without good cause is not alone a breach of the implied covenant, an employer may sometimes be held liable for lost compensation if that compensation is 'clearly related' to the

dismissed employee's 'past service.'" *Id.* (quoting *Gram I,* 429 N.E.2d at 28-29). "The purpose

of the doctrine is 'to prevent overreaching by employers and the forfeiture by employees of

benefits almost earned by the rendering of substantial services.'" *Suzuki,* 2019 WL 109340, at *8

(quoting *Fortune*, 364 N.E.2d at 1257).

Like Massachusetts, "New York courts and the Second Circuit have created an exception

to an employer's right to terminate an employee at-will in some limited circumstances."

*Mirabella v. Turner Broad. Sys., Inc.,* No. 01 CIV. 5563(BSJ), 2003 WL 21146657, at *1

(S.D.N.Y. May 19, 2003). "In *Wakefield v. N. Telecom, Inc.,* 769 F.2d 109 (2d Cir. 1985), the

Second Circuit held that an at-will employee could recover under a breach of covenant of good

faith and fair dealing theory if the employee could demonstrate that his employment was

terminated so that the employer could avoid paying him earned commissions on completed

sales." *Id. See Ulrich v. Moody's Corp.*, No. 13 Civ. 0008 (VSB)(MHD), 2014 WL 12776746,

at *23 n.25 (S.D.N.Y. Mar. 31, 2014), *rec. dec. adopted as modified,* No. 13-CV-00008 (VSB),

2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014). Thus, *Wakefield* espouses a theory of recovery for

terminated at-will employees similar to that permitted by *Fortune* under Massachusetts law.

The application of *Wakefield* comes with a caveat, however. New York state courts have

not expressly overruled *Wakefield,* but neither have they consistently embraced its holding. *See*

*In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 54 (Bankr. S.D.N.Y. 2007), *aff'd in part sub nom.*

*Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 64 (S.D.N.Y. 2008), *aff'd.,* Nos. 05 Civ.

9050 (LMM), 03 MDL 1529, 2008 WL 1959542 (S.D.N.Y. May 5, 2008) ("On a matter of state

law, the views of a federal court, even a Circuit Court of Appeals, cannot trump those of a state's

highest court."). Four years after *Wakefield,* "the New York Court of Appeals handed down an

opinion in *Gallagher v. Lambert, . . .* 549 N.E.2d 136 (N.Y. 1989) which ignored but

nevertheless questioned by implication the holding in *Wakefield." Bravia Capital Partners, Inc. v. Fike*, No. 09 Civ. 6375 (JFK), 2010 WL 3359470, at *6 (S.D.N.Y. Aug. 25, 2010). *See also Knudsen v. Quebecor Printing (U.S.A.) Inc.,* 792 F. Supp. 234, 238 (S.D.N.Y. 1992). "Thus, *Wakefield's* continued validity . . . is unclear." *Bravia Capital Partners, Inc.,* 2010 WL 3359470, at *6. *See Houlahan v. Raptor Trading Sys., Inc.,* 16 Civ. 9620 (PGG), 2018 WL 3231662, at *7-8 (S.D.N.Y. Feb. 12, 2018) ("Several New York state courts have . . . concluded that *Wakefield* is either no longer good law or should be strictly limited to its facts," but finding that "*Wakefield* is still viable in the sales commission context.") (collecting cases); *Baguer v. Spanish Broad. Sys., Inc.,* No. 04-CV-8393 (KMK), 2007 WL 2780390, at *10 (S.D.N.Y. Sept. 20, 2007) ("Because *Wakefield* preceded *Gallagher,* it is unclear whether *Wakefield* remains good law."); *Collins & Aikman Floor Coverings Corp. v. Froehlich,* 736 F. Supp. 480, 486 (S.D.N.Y. 1990) ("The Court in *Gallagher* reiterated the applicability of the employment at-will rule and reconfirmed that a departure from the clear and unambiguous written agreement between parties is not permissible. Reliance upon *Wakefield* turned out to be in error under New York law."); *Firtell v. Update, Inc.*, No. 604290/2006, 2007 WL 2756965, at *6 (N.Y. Sup. Ct. Sept. 20, 2007) ("New York State courts have generally rejected the holding of the Second Circuit in *Wakefield* to the extent of holding that a claim which purports to allege that an employer breached the implied covenant by terminating an at-will employee—even specifically in order to avoid paying the employee additional compensation which would be owed if the employment had continued—fails to state a claim."). !*But see, e.g., Rozenzweig,* 251 F. Supp. 3d at 460 (applying *Wakefield* and finding that it was plausible that the plaintiff's employer breached the implied covenant of good faith and fair dealing by terminating plaintiff to avoid providing her with a reasonable accommodation, pregnancy leave, or disability benefits); *Knudsen,* 792 F.

Supp. at 239-40 (distinguishing *Gallagher* on its facts and holding that "*Gallagher* does not

disturb the authority of *Wakefield* at least in the context of employment sales commission

provisions."); *Arbeeny v. Kennedy Exec. Search, Inc.,* 893 N.Y.S.2d 39, 45 n.6 (N.Y. App. Div.

2010) ("[N]either the Second Circuit nor the New York State Court of Appeals has rejected

[*Wakefield*].").  !

    Even if *Wakefield* was found to apply here, there is a conflict between the law of

Massachusetts, which permits recovery under the *Gram* theory, and the law of New York, which

does not.  Consequently, the court must determine whether the choice-of-law provisions in the

agreements should be enforced.  "Where State policies differ, '[Massachusetts courts] look to

[their] established "functional" choice of law principles and to the Restatement (Second) of

Conflict of Laws, with which those principles generally are in accord.'"  *Feeney v. Dell Inc.*, 908

N.E.2d 753, 766 (Mass. 2009) (quoting *Hodas v. Morin,* 814 N.E.2d 320, 324 (Mass. 2004)).  In

interpreting contracts with a choice-of-law provision, "'Massachusetts courts will uphold the

parties' choice as long as the result is not contrary to public policy.'"  *Hodas,* 814 N.E.2d  at 325

(quoting *Steranko v. Inforex, Inc.,* 362 N.E.2d 222, 228 (Mass. App. Ct. 1977)).  *See Ne. Data

Sys., Inc. v. McDonnell Douglas Comput. Sys. Co.*, 986 F.2d 607, 610 (1st Cir. 1993) ("In the

absence of a conflict with public policy, Massachusetts honors choice-of-law provisions in

contracts . . . .").  To decide whether the choice-of-law provision conforms to public policy, !

> Massachusetts courts apply the "two-tiered analysis" of the Restatement (Second) of
> Conflict of Laws § 187 (1971) to determine "[1] whether the State chosen by the parties
> has a 'substantial relationship' to the transaction and, [2] whether [a] '"application of the
> law of the chosen state . . . would be contrary to a fundamental policy of a state . . . which
> has a materially greater interest than the chosen state" and [b] is the State whose law
> would apply . . . "in the absence of an effective choice of law by the parties."'"

*KSA Elec., Inc. v. M/A-COM Tech. Sols., Inc.,* Civil Action No. 15-10848-FDS, 2015 WL

4396477, at *3 (D. Mass. July 17, 2015) (first and second alterations in original) (quoting

*Feeney,* 908 N.E.2d at 766). *See Oxford Glob. Res., LLC v. Hernandez,* 106 N.E.3d 556, 564 (Mass. 2018).

As to the first prong, there is no dispute that New York has a substantial relationship to the parties or the transaction. Guardian was organized under the laws of New York and PAS's principal place of business was in New York (Dkt. No. 1 ¶¶ 5, 6). *See Oxford Glob. Res., LLC,* 106 N.E.3d at 564. However, the choice of law provision does not survive the second prong of the analysis.

As to part (b) of the second prong, "[u]nder Massachusetts choice of law principles, if the agreement here were silent as to choice of law, the rights of the parties would be 'determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties.'" *Id.* at 563 (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 669 (Mass. 1985)).

> In identifying the State with the most significant relationship to the transaction and the parties [under Massachusetts law], [courts] evaluate: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

*Oxford Glob. Res., LLC,* 106 N.E.3d at 563 (quoting *Bushkin Assocs., Inc.,* 473 N.E.2d at 669). Although the record does not address all the factors, Plaintiff performed his job duties in Massachusetts during the twenty years that he was employed by Defendants (Dkt. No. 1 ¶ 10). Guardian reimbursed Plaintiff for the rent of his office in Framingham, Massachusetts and the overhead expenses, including office supplies, equipment, and the administrative staff's salaries (Dkt. No. 1 ¶¶ 17, 18). Consequently, these factors tilt slightly in favor of applying Massachusetts law in the absence of the choice-of-law provisions. *See Krause v. UPS Supply Chain Sols.,* Civil Action No. 08-cv-10237-DPW, 2009 WL 3578601, at *6 (D. Mass. Oct. 28,

2009) (applying Massachusetts law where the contract was performed in Massachusetts and where the plaintiff maintained an office).

As to part (a) of the second prong of the test, application of New York law, which does not recognize the *Gram* doctrine and may not recognize the *Fortune* doctrine as articulated in *Wakefield,* would be contrary to the important policy considerations that are expressed in the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150. "[T]he Wage Act . . . embod[ies] fundamental public policy" to protect employees' compensation. *Melia v. Zenhire, Inc.,* 967 N.E.2d 580, 587 (Mass. 2012). "The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.'" *Id.* (quoting *Boston Police Patrolmen's Ass'n, Inc. v. City of Boston,* 761 N.E.2d 479, 481 (Mass. 2002)). *See Prescott v. Higgins,* 538 F.3d 32, 42 (1st Cir. 2008); *Cumpata v. Blue Cross Blue Shield of Mass., Inc.,* 113 F. Supp. 2d 164, 168 (D. Mass. 2000) ("The Wage Act is meant to protect employees from the dictates and whims of shrewd employers."); *Elec. Data Sys. Corp. v. Attorney Gen.,* 907 N.E.2d 635, 641 (Mass. 2009) ("The Wage Act is intended to protect employees and their right to wages."). "[T]he [Massachusetts] Legislature has highlighted the fundamental importance of the Wage Act by . . . expanding its protections" to cover commissions that are "'definitely determined'" and "'due and payable.'" *Melia,* 967 N.E.2d at 588 & n.7 (quoting Mass. Gen. Laws ch. 148, § 149). *See Wiedmann v. The Bradford Grp., Inc.*, 831 N.E.2d 304, 312 (Mass. 2005) (commissions that are "arithmetically determinable" are recoverable under the Wage Act).

The Wage Act affords protection to a terminated employee's commissions that are tantamount to the safeguards provided under *Fortune* and *Gram*. *See McAleer v. Prudential Ins. Co. of Am.,* 928 F. Supp. 2d 280, 291 (D. Mass. 2013) (allowing a claim for breach of the implied covenant to proceed under the *Fortune* doctrine based on the defendant's "improper

14

refusal to pay commissions in violation of the Wage Act where the plaintiff sought to prove that her termination was 'without good cause'"); *Robinson v. Spencer Stuart, Inc.,* Civil Action No. 13-10278-RWZ, 2013 WL 3989672, at *6-7 (D. Mass. Aug. 5, 2013) (the *Gram* and the Wage Act claims, which alleged that the employer denied plaintiff his earned commissions, were sufficiently pled); *Parker v. EnerNOC, Inc.*, 139 N.E.3d 328, 336 (Mass. 2020) ("a fundamental purpose of the Wage Act would be undercut if employers could escape liability under the act by retaliating against employees to avoid paying commissions that would otherwise be due and payable.") (citing *Fortune,* 364 N.E.2d at 1257). Even if *Wakefield* is viable, New York law does not recognize *Gram's* more employee-friendly theory of recovery, which, in contrast to *Fortune* and *Wakefield,* does not require the employee to prove that his employer acted in bad faith. *See Thompson,* 2013 WL 3989672, at *6 n.6 (*Gram* "allowed the employee to claim future compensation for past services even though there was 'no evidence warranting an inference that [the employer] discharged [the employee] for the purpose of appropriating his past services.'") (alterations in original) (quoting *Gram I,* 429 N.E.2d at 29). Therefore, enforcement of the choice-of-law provisions that require application of the more restrictive New York law would violate the policy embodied in the Massachusetts Wage Act. *See Awuah v. Coverall N. Am., Inc.,* 952 N.E.2d 890, 901 (Mass. 2011) ("A contract term that violates public policy is not entitled to be enforced."). *Compare Melia,* 967 N.E.2d at 590 ("A forum selection clause that, in operation, would deprive an employee of substantive rights guaranteed by the Wage Act violates public policy and is unenforceable.").

The court concludes that Massachusetts has a paramount interest in allowing a terminated at-will employee who worked in Massachusetts to recover commissions like those protected by its Wage Act. Accordingly, the court will apply Massachusetts law.

2.    The complaint states a plausible claim for relief for a breach of the implied covenant of good faith and fair dealing.

Viewing the complaint under the plaintiff-favorable standard applicable at this stage of the litigation, Plaintiff has stated a plausible claim for a breach of the covenant of good faith and fair dealing under *Fortune* and *Gram*.  "To advance a claim for breach of the covenant, a Plaintiff must establish four elements:  (1) status as an at-will employee; (2) termination of employment; (3) termination without 'good cause' or in 'bad faith'; and (4) termination with the purpose of depriving an employee of benefits to which he is entitled."  *Vonachen v. Computer Assocs. Int'l, Inc.*, 524 F. Supp. 2d 129, 137 (D. Mass. 2007).  The third and fourth elements are contested.

Under *Fortune,* "an employer is accountable to a discharged employee for unpaid compensation if the employee [was] terminated in bad faith and the compensation is clearly connected to work already performed."  *Harrison v. NetCentric Corp.,* 744 N.E.2d 622, 629 (Mass. 2001) (citing *Fortune,* 364 N.E.2d at 1257).  Liability under *Fortune* requires determination of the Defendant's motive or intent for Plaintiff's discharge.  *See Lass v. Bank of Am., N.A.,* 695 F.3d 129, 138 (1st Cir. 2012) ("Evidence that the defendant acted 'to gain an advantage for itself' can support a claim for breach of the covenant.") (citing *T.W. Nickerson, Inc. v. Fleet Nat. Bank,* 924 N.E.2d 696, 707 (Mass. 2010)); *Cort v. Bristol-Myers Co.,* 431 N.E.2d 908, 910 (Mass. 1982).  Because Plaintiff alleges that Defendants discharged him in order to retain his renewal commissions, his claim for breach of the implied covenant is not amenable to resolution on a motion to dismiss (Dkt. No. 1 ¶¶ 36, 46, 55, 56).  *See Edsall v. Assumption Coll.,* 367 F. Supp. 2d 72, 85 (D. Mass. 2005) ("Because the issue [of actual malice] inevitably turns on motivations and intent, it is ill-suited for resolution in a motion to dismiss.").

Similarly, Defendants' liability under *Gram* presents a question of fact as to whether or not they had good cause to discharge Plaintiff. *See Suzuki,* 943 F.3d at 562. "No doubt that whether a termination was for good cause commonly presents a fact question for the jury." *York v. Zurich Scudder Invs., Inc.*, 849 N.E.2d 892, 900 (Mass. App. Ct. 2006). Given that Plaintiff alleges facts to support the absence of good cause for his termination, dismissal would be premature (Dkt. No. 1 ¶¶ 1, 2, 3, 33, 35, 45, 46, 57). *See Maddaloni v. W. Mass. Bus Lines, Inc.,* 438 N.E.2d 351, 355 (Mass. 1982) ("The jurors are not required to believe [the employer's] testimony that the plaintiff was discharged for legitimate business reasons. When evidence on a contested matter is conflicting, the issue is for the trier of fact.").

Defendants' argument that Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed because the FRA and RRA govern the issue lacks force. "Conceptually, claims for breach of the implied covenant of good faith and fair dealing are distinct from simple breach of contract claims and require additional factual allegations of unfairly leveraging the contract terms for undue economic advantage." *Christensen*, 360 F. Supp. 2d at 229. The case upon which Defendants rely, *Levesque v. Schroder Inv. Mgmt. N. Am., Inc.,* 368 F. Supp. 3d 302 (D. Mass. 2019), is distinguishable. First, *Levesque* applied New York law. *See id.* at 311. In addition, unlike the present record, the *Levesque* court's record included the specific terms of the plaintiff's compensation plans. *See id.* at 307, 311.

3.  Damages

Plaintiff's request for relief includes: (1) damages for the loss of future income including "loss of future earning associated with vested and non-vested renewals, and loss of future earning associated with collection and service fees;" (2) damages resulting from loss of future retirement income; (3) damages resulting in harm to his reputation; and (4) damages resulting from the loss

of business value (Dkt. No. 1 ¶ 65 A-D).  With the exception of "future commissions that are tied solely to the work he performed as an agent during the duration of his contracts," Defendants challenge Plaintiff's damage requests as a matter of law (Dkt. No. 11 at 16).  Specifically, Defendants challenge Plaintiff's requests for damages based on "future services," "the length of his tenure," and "an expectation of continued employment" (Dkt. No. 11 at 15-20; Dkt. No. 18 at 13).  Plaintiff counters that the measure of Plaintiff's damages is not appropriate at the motion to dismiss stage (Dkt. No. 17 at 11).

The court recognizes that damages recoverable by Plaintiff under the *Fortune* and *Gram* theories are limited to those that will deny Defendants "any readily definable, financial windfall resulting from the denial to [Plaintiff] of compensation for past services."  *Gram v. Liberty Mut. Ins. Co. (Gram II),* 461 N.E.2d 796, 798 (Mass. 1984).

> For compensation to be considered "due" to an employee under *Fortune/Gram* and its progeny, the [SJC] has said the employee must have been "on the brink" of achieving a qualifying milestone, *Fortune*, [364 N.E.2d at 1257], that the compensation was "fairly earned and legitimately expected" by the employee, *Maddaloni . . . ,* [438 N.E.2d at 356], or that the compensation was "clearly connected to work already performed" by the employee, *Harrison . . . ,* [744 N.E.2d at 629] (citing both *Fortune* and *Gram*).

*Suzuki,* 2019 WL 109340, at *8.  Thus, a plaintiff is not entitled to recover "lost wages and fringe benefits unrelated to past services," *Maddaloni,* 438 N.E.2d at 356, or damages due to the "loss of reputation and emotional distress."  *Williams v. Astra USA, Inc.,* 68 F. Supp. 2d 29, 37 (D. Mass. 1999).  Although it is clear that Plaintiff cannot recover damages for loss of reputation, it is not clear at this stage of the litigation whether his other requests for relief fall into the categories of damages that are not recoverable.

The allegations in the complaint are sufficient to state a claim for relief for the breach of the covenant of good faith and fair dealing.  Accordingly, Defendants' motion to dismiss Count I is denied.

B. <u>Count II:  Unjust Enrichment</u>

      1.    Choice of Law

Although "choice-of-law provisions in a contract do not automatically apply to quasi-contract claims, *see Dinan v. Alpha Networks, Inc.*, 764 F.3d 64, 69 (1st Cir. 2014), and the text of the choice-of-law provisions here are limited to the contracts themselves," Massachusetts' choice-of-law principles would apply if Massachusetts and New York law conflicted.  *Plante & Moran, PLLC v. Andover Healthcare, Inc.*, Civil Action No. 17-10093-DJC, 2018 WL 5921643, at *5 (D. Mass. Nov. 13, 2018).  However, the elements of unjust enrichment are substantially similar in New York and Massachusetts.  *See In re Interior Molded Doors Antitrust Litig.*, Lead Civil Action No. 3:18-cv-00718-JAG, Lead Civil Action No. 3:18-cv-00850-JAG, 2019 WL 4478734, at *22 (E.D. Va. Sept. 18, 2019) ("unjust enrichment laws are 'materially the same throughout the United States.'") (quoting *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998)); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010) ("Courts have noted that unjust enrichment claims in different states are substantially similar.").  "A federal court sitting in diversity need not make a finding regarding which state's law is to be applied where the case's resolution would be identical under either state's law."  *Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 28 (1st Cir. 1998) (citing *Pediatricians, Inc. v. Provident Life & Accident Ins. Co.,* 965 F.2d 1164, 1168 (1st Cir. 1992); *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1092 (1st Cir. 1989)).

Under Massachusetts and New York law, "a plaintiff must establish that one party unjustly retained a benefit to another party's detriment."  *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, No. 08-CV-0179 (SLT) (RER), 2012 WL 4336218, at *8 (E.D.N.Y. Sept. 17, 2012), *rec. adopted in part*, 20 F. Supp. 3d 305 (E.D.N.Y. 2014), *aff'd,*

806 F.3d 71 (2d Cir. 2015).  Massachusetts defines "[u]njust enrichment . . . as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"" *Koufos v. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 52 (D. Mass. 2013) (quoting *Santagate v. Tower,* 833 N.E.2d 171, 176 (Mass. App. Ct. 2005)). !!!'A claim for unjust enrichment requires three elements:  '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value.'" *Id.* (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 57 (1st Cir. 2009)).  In New York, "[t]he essence of . . . a cause of action [for unjust enrichment] is that one party is in possession of money or property that rightly belongs to another." *Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 819 N.Y.S.2d 182, 187 (N.Y. App. Div. 2006).  Similar to Massachusetts, "[t]he elements of an unjust enrichment claim under New York law are:  (1) the defendants were enriched; (2) at the plaintiffs' expense; and (3) 'it is against equity and good conscience to permit [the defendants] to retain what is sought to be recovered.'" *Gustavsen v. Alcon Labs., Inc.*, 272 F. Supp. 3d 241, 249 (D. Mass. 2017), *aff'd,* 903 F.3d 1 (1st Cir. 2018) (quoting *Mandarin Trading Ltd. v Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)).

2.      The complaint states a viable claim for unjust enrichment.

Defendants argue for dismissal of the unjust enrichment claim on the grounds that it is duplicative of the claim for the breach of the implied covenant of good faith and fair dealing and that the contract provisions govern the dispute (Dkt. No. 11 at 13-14).[7]  As to the argument that

---

[7] Although Defendants argue that Plaintiff "concedes" that Count II is duplicative of Count I because he failed to address their argument in his opposition to the motion to dismiss (Dkt. No.

Count II is duplicative of Count I, Fed. R. Civ. P. 8(d)(2) permits a party to present alternative claims based on the same facts. "The plaintiff[] ha[s] the right to plead alternative theories of liability, *see* Fed. R. Civ. P. 8(d), and [his] exercise of that right [does] not debar [him] from an independent review of each set of claims." *Limone v. United States,* 579 F.3d 79, 93 (1st Cir. 2009). *See Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir. 1994) ("Under [Fed. R. Civ. P. 8(d)(2)], a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency."); *AECOM Tech. Servs. Inc. v. Mallinckrodt LLC*, 117 F. Supp. 3d 98, 113 (D. Mass. 2015) (rejecting a request for dismissal on the ground that claims of good faith and fair dealing and unjust enrichment were mutually exclusive); *Lavastone Capital LLC v. Coventry First LLC,* Nos. 14-cv-7139, 14-cv-7967 (JSR), 2015 WL 1939711, at *12 (S.D.N.Y. Apr. 22, 2015) (claims of breach of the implied covenant and unjust enrichment survived a motion to dismiss); *Linton v. N.Y. Life Ins. & Annuity Corp.,* 392 F. Supp. 39, 42 (D. Mass. 2005) (denying the motion to dismiss the claims alleging breach of the covenant of good faith and fair dealing and unjust enrichment). If Plaintiff later establishes that the same conduct proved the same injuries under both theories, "duplicative damage recoveries will not be permitted." *Szalla v. Locke,* 657 N.E.2d 1267, 1271 (Mass. 1995).

In some circumstances, a claim of unjust enrichment may be found to be duplicative of a breach of contract claim. *See Plastic Surgery Assoc., S.C. v. Cynosure, Inc.,* 407 F. Supp. 3d 59, 83 (D. Mass. 2019) (because agreements "'plainly govern[] the relationship of the parties, [p]laintiff's claim for unjust enrichment is precluded.'") (first alteration original) (citation omitted); *Malden Police Patrolman's Ass'n v. City of Malden*, 82 N.E.3d 1055, 1063 (Mass. App. Ct. 2017) ("A plaintiff is not entitled to recovery on a theory of unjust enrichment where a valid

---

18 at 12-13), Plaintiff referenced case law indicating that allegedly duplicative claims can proceed beyond the motion to dismiss stage (Dkt. No. 17 at 8-9).

contract defines the obligations of the parties."); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").  Because Plaintiff alleges that his claims are not governed by the agreements and because the provisions of the agreements between Plaintiff, Guardian, and PAS that address Plaintiff's compensation are not before the court on the present record, dismissal of the unjust enrichment claim at this stage of the litigation would be premature.  "[T]he district court will be in a better position once the record is more developed to determine whether the unjust enrichment claim should survive." *Lass v. Bank of Am., N.A.,* 695 F.3d 129, 140-41 (1st Cir. 2012). *See Duncan v. Nissan N. Am., Inc.,* 305 F. Supp. 3d 311, 323 (D. Mass. 2018) ("[It] is not uncommon for an unjust enrichment claim to proceed, in the alternative, with a breach of contract claim beyond the motion to dismiss stage.") (citing *Lass,* 695 F.3d at 140); *Tianbo Huang v. iTV Media, Inc.,* 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (rejecting as premature the claim that the unjust enrichment and good faith and fair dealing counts were duplicative of the breach of contract claim); *Knudsen*, 792 F. Supp. at 237 ("courts generally dismiss claims for quantum meruit on the pleadings only when it is clear from the face of the complaint that there exists an express contract that clearly controls.").  *Compare Levesque,* 369 F. Supp. 3d at 311 (rejecting quasi-contract claims under New York law where the express provisions of the compensation agreement controlled); *Echostar DBS Corp.,* 2007 WL 438088, at *8-9 (dismissing the unjust enrichment claim where it was clear that the specific terms of the agreement governed the dispute between the parties).

The complaint's allegations are sufficient to allege a plausible claim for unjust enrichment.  "Under the doctrine of unjust enrichment, a plaintiff seeks restitution of a benefit

conferred on another whose retention of the benefit at plaintiff's expense would be unconscionable." *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010). Plaintiff alleges that Defendants intentionally retained the renewal commissions that he earned from work he had performed prior to his discharge. According to Plaintiff, because his employment was terminated "without cause," as evidenced by Defendants' stated reasons for the discharge, Defendants' retention of his renewal commissions would be unjust (Dkt. No. 1 ¶¶ 60-64). *See Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144, 1152 (1st Cir. 1989) ("The [*Fortune* and *Gram* line of] cases equate an unfair denial of earned commissions with unjust enrichment.").

Plaintiff can proceed on the unjust enrichment claim. Accordingly, Defendants' request to dismiss Count II is denied.

V.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. No. 9) is denied. The Clerk's Office is directed to select a date for an initial scheduling conference pursuant to Fed. R. Civ. P. 16(a) & (b) on a date that is mutually convenient for the parties and the court.

It is so ordered.

Date: March 25, 2020                                    /s/ Katherine A. Robertson____
                                                        KATHERINE A. ROBERTSON
                                                        United States Magistrate Judge

!!