UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW FINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-30067-KAR |
| | ) | |
| THE GUARDIAN LIFE INSURANCE | ) | |
| COMPANY OF AMERICA AND PARK | ) | |
| AVENUE SECURITIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT PARK AVENUE
SECURITIES, LLC'S MOTION TO DISMISS
(Dkt. No. 46)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

After the agreements Plaintiff Matthew Fine ("Plaintiff") had with The Guardian Life

Insurance Company of America ("Guardian") and Park Avenue Securities, LLC ("PAS")

(collectively, "Defendants") were terminated, he brought claims against Defendants for breach of

the implied covenant of good faith and fair dealing (Count I), unjust enrichment (Count II), and a

violation of the Massachusetts Wage Act ("MWA"), Mass. Gen. Laws ch. 149, § 148 (Count III)

(Dkt. No. 40, First Amended Complaint).  Before the court is PAS's motion to dismiss so much

of Plaintiff's First Amended Complaint ("FAC") as alleges claims against it (Dkt. No. 46).  The

parties have consented to this court's jurisdiction (Dkt. No. 14).  *See* 28 U.S.C. § 636(c); Fed. R.

Civ. P. 73.  For the reasons that follow, PAS's motion is ALLOWED.

II.    BACKGROUND

A.    <u>Factual Background</u>[1]

Guardian, a company which was organized under the laws of New York, provides life, disability, and other insurance products to clients in the United States (Dkt. No. 40 ¶ 5).  PAS is a limited liability company organized under the laws of Delaware with its principal place of business in New York (Dkt. No. 40 ¶ 6).  "Upon information and belief, PAS is a subsidiary/affiliate of Guardian" (Dkt. No. 40 ¶ 6).  On December 16, 1997, Guardian purportedly hired Plaintiff as a Field Representative (Dkt. No. 1 ¶ 9).  PAS purportedly hired Plaintiff as a Registered Representative on December 13, 2000 (Dkt. No. 40 ¶ 9).  Plaintiff's so-called employment agreement with PAS described Plaintiff as an independent contractor (Dkt. No. 40 ¶ 25).

During Plaintiff's tenure with Defendants, he sold approximately 1,800 Guardian insurance policies (Dkt. No. 40 ¶¶ 1, 12).  He received an annual salary, commissions, and renewal commissions ("renewals") from the Guardian equity, disability, and life insurance products that he sold (Dkt. No. 40 ¶¶ 14, 15).  Plaintiff earned renewals in excess of $150,000 to $300,000 annually (Dkt. No. 40 ¶ 53).

On May 1, 2018, Plaintiff traveled to Washington, D.C. to attend a required Guardian conference that was scheduled to begin on May 3, 2018 (Dkt. No. 40 ¶ 27).  He arrived two days early to play golf (Dkt. No. 40 ¶ 28).  Before the conference began, Plaintiff engaged in consensual sexual activity with a woman who was attending an unrelated conference at Plaintiff's hotel (Dkt. No. 40 ¶ 29).  The hotel staff awakened Plaintiff at 3:00 A.M. and informed him that the woman's male co-worker had accused Plaintiff of sexual misconduct (Dkt. No. 40 ¶¶ 30, 31).  The hotel's policy required its staff to notify the police (Dkt. No. 40 ¶ 32).  After the police

---

[1] Unless another source is cited, the facts are drawn from the FAC (Dkt. No. 40).

investigated the complaint, they did not charge Plaintiff with a crime (Dkt. No. 40 ¶¶ 2, 32, 33). Guardian prohibited Plaintiff from attending the conference (Dkt. No. 40 ¶ 34).

Plaintiff received a termination letter on May 8, 2018, which stated that "his termination w[ould] be effective May 22, 2017," but provided no explanation for his discharge (Dkt. No. 40 ¶¶ 35, 36).[2] After Plaintiff repeatedly pressed for the reason for his discharge, representatives of Guardian stated that they had lost faith in him (Dkt. No. 40 ¶¶ 2, 40).  On the Financial Industry Regulatory Authority ("FINRA") Form U-5, which notified FINRA that a registered representative's license to sell securities had been terminated, Guardian and PAS did not indicate that Plaintiff had engaged in misconduct or wrongdoing (Dkt. No. 40 ¶¶ 45, 46).[3]

B.     Travels of the Case

Plaintiff's original complaint was filed on May 10, 2019 (Dkt. No. 1).  Plaintiff alleged that, by terminating his employment, Defendants breached the covenant of good faith and fair dealing (Count I) and were unjustly enriched (Count II) (Dkt. No. 1).  On July 22, 2019, Guardian and PAS moved to dismiss the complaint (Dkt. No. 9).  After hearing from the parties, this court denied the motion on March 25, 2020 (Dkt. Nos. 24, 27).  *See Fine v. Guardian Life Ins. Co. of Am.,* 450 F. Supp. 3d 20 (D. Mass. 2020).  Plaintiff's motion to amend the complaint was allowed without opposition and the FAC was filed on July 16, 2020 (Dkt. Nos. 37, 39, 40). The FAC included the original claims of breach of the covenant of good faith and fair dealing (Count I) and unjust enrichment (Count II) and added a claim for a violation of the MWA against

---

[2] It seems likely that the discharge date in the letter is a typographical error.  The date is inconsequential to the resolution of the instant motion.

[3] PAS submitted the Form U-5 as an exhibit to its memorandum in support of its motion to dismiss (Dkt. No. 46-2).  Because the document is not "central to plaintiff's claim," or "sufficiently referred to in the complaint," the court will not take its contents into account in ruling on PAS's motion to dismiss.  *Watterson v. Page,* 987 F.2d 1, 3, (1st Cir. 1993).

both defendants (Count III) (Dkt. No. 40).  On August 13, 2020, PAS moved to dismiss the
claims against it (Dkt. No. 46).

III.    LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a
claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D.
Mass. Jan. 9, 2020).  In ruling on the motion, a court must "treat all well-pleaded facts in the
complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin.
Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v.
Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).  "'[D]etailed factual allegations' are not required,
but the complaint must set forth 'more than labels and conclusions.'" *Frith v. Whole Foods Mkt.,
Inc.,* Civil Action No. 20-cv-11358-ADB, 2021 WL 413606, at *3 (D. Mass. Feb. 5, 2021)
(alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The
alleged facts must be sufficient to 'state a claim to relief that is plausible on its face.'" *Id.*
(quoting *Twombly,* 550 U.S. at 570).

"To cross the plausibility threshold a claim does not need to be probable, but it must give
rise to more than a mere possibility of liability." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–
45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A determination of
plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial
experience and common sense.'" *Id.* at 44 (quoting *Iqbal*, 556 U.S. at 679).  "[T]he complaint
should be read as a whole, not parsed piece by piece to determine whether each allegation, in
isolation, is plausible." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 103 (1st Cir. 2013) (quoting
*Ocasio-Hernández*, 640 F.3d at 14).  "The plausibility standard invites a two-step pavane." *A.G.
ex rel. Maddox v. Elsevier, Inc.,* 732 F.3d at 80 (citing *Grajales,* 682 F.3d at 45).  "First, the

4

[c]ourt 'must separate the complaint's factual allegations (which must be accepted as true) from

its conclusory legal allegations (which need not be credited).'" *Frith,* 2021 WL 413606, at *3

(quoting *Elsevier,* 732 F.3d at 80).  *See Twombly,* 550 U.S. at 555 ("labels and [legal]

conclusions, and a formulaic recitation of the elements of a cause of action . . . " are insufficient

to "raise a right to relief above the speculative level.").  "Second, the [c]ourt 'must determine

whether the remaining factual content allows a "reasonable inference that the defendant is liable

for the misconduct alleged."'" *Frith,* 2021 WL 413606, at *3 (quoting *Elsevier*, 732 F.3d at 80).

"Simply put, the court should assume that well-pleaded facts are genuine and then determine

whether such facts state a plausible claim for relief." *Ngomba,* 2020 WL 107969, at *2 (citing

*Iqbal,* 556 U.S. at 679).

    IV.    ANALYSIS

    A.    <u>Count III:  Violation of the Massachusetts Wage Act</u>

In the FAC, Plaintiff claims that as his employer under the MWA, PAS violated that law

by failing to pay commissions that were due to him (Dkt. No. 40 ¶¶ 65-73).  PAS argues that the

MWA claim must be dismissed because Plaintiff fails to allege sufficient facts to show that PAS

was Plaintiff's employer under either of the two tests that Massachusetts courts have used to

determine whether a defendant was an employer under the MWA:  (1) the statutory test, which

analyzes the employer-employee relationship under Mass. Gen. Laws ch. 149, § 148B; or (2) the

common law test, which determines whether a defendant is a joint employer or part of an

integrated enterprise (Dkt. No. 46-1 at 12-21; Dkt. No. 50 at 8-14).  *See Gallagher v. Cerebral*

*Palsy of Mass., Inc.,* 86 N.E.3d 496, 499, 502 (Mass. App. Ct. 2017).

"The Wage Act imposes liability on employers who fail to pay wages earned by their

employees." *Ellicott v. Am. Capital Energy, Inc.*, 906 F.3d 164, 169 (1st Cir. 2018) (citing Mass.

Gen. Laws ch. 149, § 148).  "To establish a Wage Act claim, a plaintiff must show that: (1) he

was an employee under the Wage Act; (2) the compensation constitutes wages pursuant to the

Wage Act; (3) the Wage Act was violated; and (4) any individual defendants were corporate

officers as defined by the statute." *Id.* (citing *Stanton v. Lighthouse Fin. Servs., Inc.*, 621 F.

Supp. 2d 5, 10 (D. Mass. 2009)).  The first element, Plaintiff's status as PAS's employee, is at

issue here.

       1.     Plaintiff has not adequately alleged that PAS was his employer under
               Mass. Gen. Laws ch. 149, § 148B.

The MWA applies only to employer-employee relationships.  *See Ferrara v. Voyport II,*

*LLC,* Case No. 16-cv-12024-LTS, 2018 WL 5555066, at *2 (D. Mass. Oct. 29, 2018).  "In order

to determine whether such a relationship exists, Massachusetts courts apply a two-step inquiry

under the 'Independent Contractor Statute.'"  *Id.* (quoting Mass. Gen. Laws ch. 149, § 148B).

"First, the 'threshold question is whether the plaintiff[ ] provided services to the defendant[ ],'

which creates a presumption that the individual is an employee."  *Id.* (alterations in original)

(quoting *Sebago v. Boston Cab Dispatch, Inc.,* 28 N.E.3d 1139, 1147 (Mass. 2015)).  "Under the

second step, the putative employer may rebut that presumption by proving, pursuant to a three-

part test, that the person worked as an independent contractor."  *Gallagher,* 86 N.E.3d at 499.

Consequently, according to § 148B(a), an individual who performs a service for a putative

employer is presumed to be an employee unless:

> (1) the individual is free from control and direction in connection with the
> performance of the service, both under his contract for the performance of service
> and in fact; and
>
> (2) the service is performed outside the usual course of the business of the
> employer; and,
>
> (3) the individual is customarily engaged in an independently established trade,
> occupation, profession or business of the same nature as that involved in the
> service performed.

Mass. Gen. Laws ch. 149, § 148B(a)(1)-(3).  The statute requires the employer to satisfy all three

prongs of the so-called "ABC Test" by a preponderance of the evidence to show that the worker

is not an employee but, instead, is an independent contractor.  *See Patel v. 7-Eleven, Inc.,* Civil

Action No. 17-11414-NMG, 2020 WL 5440623, at *4 (D. Mass. Sept. 10, 2020); *DaSilva v.

Border Transfer of MA,* 377 F. Supp. 3d 74, 86 (D. Mass. 2019) (citing *Chambers v. RDI

Logistics, Inc.*, 65 N.E.3d 1, 7-8 (Mass. 2016); *Somers v. Converged Access, Inc.*, 911 N.E.2d

739, 747 (Mass. 2009)).  "The fact that a putative employee has signed an agreement classifying

him as an independent contractor, rather than an employee, does not dictate the outcome of the

legal analysis."  *Valle v. Powertech Indus. Co.,* 381 F. Supp. 3d 151, 164 (D. Mass. 2019).

        In a multiple defendant case, each defendant's acts must be isolated and analyzed

separately under Rule 12(b)(6).  S*ee, e.g., Sanchez v. Pereira-Castillo,* 590 F.3d 31, 48 (1st Cir.

2009); *Rivera-Torres v. Ruiz-Vale,* Civil No. 13-1684 (SEC), 2016 WL 3962904, at *2 (D.P.R.

July 21, 2016).  PAS challenges the sufficiency of the FAC as to the MWA's threshold

requirement of alleging that Plaintiff provided services to PAS and, therefore, was PAS's

presumptive employee (Dkt. No. 46-1 at 12-15; Dkt. No. 50 at 11-12).  *See* Mass. Gen. Laws ch.

149, § 148B(a); *Sebago,* 28 N.E.3d at 1147.  Although this threshold inquiry generally must be

treated as a question of fact not amenable to resolution on a motion to dismiss, *see Patel,* 2020

WL 5440623, at *5, here, the FAC does not state facts, as opposed to making conclusory

assertions, sufficient to establish PAS's position as an employer under the MWA.  *See

Gallagher,* 86 N.E.3d at 499.

        Guardian has not contended that the FAC fails to adequately allege an employer-

employee relationship between Guardian and Plaintiff.  The FAC identifies Guardian as a life

insurance company and alleges that over the course of Plaintiff's career, he sold approximately

1,800 Guardian products for Guardian and its wholly owned subsidiary, Innovative

Underwriters, LLC, and earned 100% of his renewal commissions from the sales of Guardian

products (Dkt. No. 40 ¶¶ 5, 10, 12, 13, 14, 23).  Guardian allegedly paid Plaintiff's salary and

commissions, issued him a Form W-2, which showed his participation in Guardian's health,

401(k), and retirement plans, mailed promotional materials to his clients, reimbursed him for

business expenses including rent and license fees, paid his administrative staff, prohibited him

from attending its conference after the Washington, D.C. hotel incident, responded to his request

to explain the termination of his business relationships with Guardian and PAS, deleted his email

account, and replaced him with another agent (Dkt. No. 40 ¶¶ 11, 15, 17, 18, 20, 24, 27, 34, 40,

42, 43).

In contrast, Plaintiff's conclusory allegations about PAS's role and his relationship with

PAS are insufficient to withstand a Rule 12(b)(6) challenge.  *See Hamilton v. Partners*

*Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 387 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir.

2018) (explaining the court's reasons for granting the defendants' motions for judgment on the

pleadings).  The FAC fails to identify the nature of PAS's business, the services that Plaintiff

performed for PAS, or the benefits or payments that PAS allegedly owed Plaintiff when or after

Plaintiff's relationship with PAS ended (Dkt. No. 40).[4]  *See Rivera-Torres,* 2016 WL 3962904,

---

[4] Plaintiff asks the court to take judicial notice of the factual content of PAS's website for
purposes of establishing the nature of PAS's business (Dkt. No. 49 at 11-12).  PAS opposes the
court's consideration of the website (Dkt. No. 50 at 9 n.4).  Because the nature and extent of
PAS's business as reflected in a company website are not facts that are amenable to judicial
notice under Fed. R. Evid. 201(b), the court declines Plaintiff's request to rely on the website's
content in ruling on PAS's motion to dismiss.  *See Rivera v. Marriott Int'l, Inc.,* 456 F. Supp. 3d
330, 337-39 (D.P.R. 2020) (denying a party's request for the court to take judicial notice of a
website for the truth of its contents) (citing *Starbrands Capital, LLC v. Original MW Inc.,* Civil
Case No. 14-12270 (ADB), 2015 WL 13691435, at *4 (D. Mass. Aug. 4, 2015); Fed. R. Evid.
201(b)).

at *2 ("Where . . . a plaintiff joins multiple defendants, courts 'must determine whether, *as to each defendant,* a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.'") (quoting *Ocasio-Hernández*, 640 F.3d at 16). Relying on conclusory allegations that PAS "hired" Plaintiff, that "[a]s a Guardian and PAS insurance salesman, Plaintiff sold approximately 1,800 Guardian policies," that Plaintiff had "employment" agreements with PAS and Guardian, that Plaintiff was "fulfilling his obligations as an employee of Guardian and PAS" in the weeks before his discharge, that Guardian and PAS terminated his "employment" on May 8, 2018, and that a letter "gave no reason for the abrupt termination of his employment with Guardian and PAS . . .", Plaintiff argues that the FAC's allegations are sufficient to justify application of the § 148B presumption that he "provided services to PAS" (Dkt. No. 40 ¶¶ 9, 12, 25, 26, 35, 36; Dkt. No. 49 at 10-11).[5] Plaintiff's bald allegations that PAS "hired" him, that his agreement with PAS was an "employment agreement," that he was a "PAS insurance salesman" (although, so far as appears from the FAC, he never sold a PAS policy), and that he was fulfilling his obligations as a PAS "employee" in the weeks before the termination of his relationship with Guardian and PAS are the sorts of labels and conclusions that the Supreme

---

[5] Plaintiff asks the court to consider an unsigned "Registered Representative Agreement," which he has appended as an exhibit to his opposition to PAS's motion to dismiss (Dkt. No. 49-1). Normally, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, [a motion under Rule 12(b)(6)] must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[C]ourts have made narrow exceptions [to Rule 12(d)] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson,* 987 F.2d at 3. The court considered employment agreements, which contained the choice-of-law provisions that were at issue in the first motion to dismiss, *see Fine,* 450 F. Supp. 3d at 24 n.1, 27-32. The authenticity of those agreements was attested to by affidavit (Dkt. No. 11-1 at 1-2). Plaintiff proposes that the court rely on an unsigned document, the authenticity of which is not addressed by affidavit, and which may or may not be the same or similar to the agreement Plaintiff signed with PAS (Dkt. No. 49-1). *See Watterson,* 987 F.2d at 3.

Court and the First Circuit have directed be disregarded on a motion to dismiss.  *See, e.g.,* *Twombly*, 550 U.S. at 555 (labels and legal conclusions are insufficient); *Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir. 2011) (the plaintiff's general assertions that the governor approves or disapproves all personnel decisions, that the named subordinate officers participated in those decisions, and that the defendants knew or assumed the plaintiff was a member of a particular political group were insufficient to state a claim; "some allegations, while not stating ultimate conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual").

Plaintiff's allegations against the generic "Defendants" suffer from the same failure to identify a specific and adequate factual basis for *PAS's* alleged liability as an employer and add nothing to the sufficiency of Plaintiff's claim (Dkt. No. 46-1 at 12-15).  "In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'"  *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) (quoting *Bagheri v. Galligan,* 160 F. App'x 4, 5 (1st Cir. 2005)).  *See Sires v. Hefferman*, C.A. No. 10-11993-MLW, 2011 WL 2516093, at *5 (D. Mass. June 21, 2011) ("'By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy [the] minimum standard of pleading under Fed. R. Civ. P. 8(a).'") (alterations in original) (quoting *Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001)).  The statements in the FAC that "Defendants" were Plaintiff's "employer" and that he was their "employee" for purposes of the MWA add nothing to the analysis (Dkt. No. 40 ¶¶ 66, 67).  *See Ocasio-Hernández,* 640 F.3d at 10 (citing *Iqbal,* 556 U.S. at 678).  Nor has Plaintiff added anything of substantive value by his allegations that, after his discharge, "Defendants" failed to

produce his personnel "file," did not indicate on the Form U-5 that he was discharged for misconduct, "used the false allegation [of sexual assault] as pretext for [his] discharge," and discharged him without good cause or in bad faith in order to unjustly deprive him of his earned renewals and commissions (Dkt. No. 40 ¶¶ 2, 3, 37-39, 46, 54-57, 61-63). Those allegations against the generic "Defendants," which fail to particularize acts for which PAS was allegedly responsible, *see Bagheri,* 160 F. App'x at 5, are not specific, non-conclusory facts from which it could be reasonably inferred that Plaintiff meets § 148B's threshold requirement of establishing that he provided services to PAS. *See Gallagher,* 86 N.E.3d at 499.

> 2.    Plaintiff has not adequately alleged that PAS was his employer under the theories of joint enterprise or single integrated enterprise.

Assuming without deciding that the "provision of services" provision in § 148B did not supplant the joint employer theory of liability for purposes of the MWA, *see Gallagher*, 86 N.E.3d at 501-02, PAS further contends that the FAC does not adequately allege facts to establish PAS's status as either a joint employer or part of a single integrated enterprise that employed Plaintiff. *See Jinks v. Credico (USA) LLC,* No. 1784CV02731-BLS2, 2020 WL 1989278, at *5-7 (Mass. Sup. Ct. Mar. 31, 2020) (after ruling that the plaintiffs did not provide services to a defendant and, therefore, did not meet the threshold requirement for employee status under § 148B(a), the court analyzed the employment relationship to determine whether the defendant was the plaintiffs' joint employer). Although PAS argues that Plaintiff has failed to identify a direct employer, which is a prerequisite to a determination of a joint employment relationship, for purposes of this motion, the court assumes, without deciding, that Plaintiff has adequately alleged that Guardian was Plaintiff's direct employer (Dkt. No. 46-1 at 16). *See Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 10 (1st Cir. 2012) (in a class action alleging violations of federal wage statutes, "some direct employer need[ed] to be identified

11

before anyone in the group [of defendant healthcare providers] could be liable on the theory that some or all were responsible."); *Hamilton,* 209 F. Supp. 3d at 389 (notwithstanding the plaintiffs' allegations under a joint employment or integrated enterprise theory of liability, dismissal of Federal wage law claims was required because plaintiffs failed to identify which defendant directly employed them).

"The Supreme Court defined the concept of a 'joint-employer' as a company possessing 'sufficient control over the work of the employees' of another company." *Commodore v. Genesis Health Ventures, Inc.,* 824 N.E.2d 453, 456 (Mass. App. Ct. 2005) (quoting *Boire v. Greyhound Corp.,* 376 U.S. 473, 481 (1964)). In order to determine whether an alleged employer is a joint employer, the court examines

> "the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer" and include[s] "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."

*Hamilton,* 209 F. Supp. 3d at 390 (quoting *Baystate Alt. Staffing v. Herman,* 163 F.3d 668, 675 (1st Cir. 1998)).

The lack of information in the FAC about the relationship between Plaintiff and PAS precludes a finding of joint employment under the four-factor test. *See id.* at 391 ("there must be some element of an actual employment relationship between an employee and each putative joint employer."). First, the allegations that PAS "hired" Plaintiff and that Guardian and PAS "terminated" his employment are the kind of conclusory allegations that a court is directed to disregard on a motion to dismiss (Dkt. No. 40 ¶¶ 9, 35, 36). *See Brown v. J & W Grading, Inc.,* 390 F. Supp. 3d 337, 349-50 (D.P.R. 2019) (the conclusory statements that the defendants had the power to "'hire and fire'" the plaintiffs could not be considered when assessing the sufficiency

of the complaint).  Second, while Plaintiff alleges that *Guardian* required him to provide weekly reports and attend annual compliance meetings, he does not allege that PAS did so.  The FAC does not give rise to an inference that PAS controlled Plaintiff's work schedule and conditions of employment (Dkt. No. 40 at ¶¶ 19, 21).  Third, as to Plaintiff's rate and method of payment, the FAC's references to compensation indicate that *Guardian* paid Plaintiff's salary and commissions, provided him with various employee benefits, and issued a Form W-2 to him for every year that he sold Guardian insurance products (Dkt. No. 40 ¶¶ 15, 24).  Plaintiff's contention that "Defendants have deprived [him of] . . . the renewals that are based on his previous work as an employee of Guardian and PAS" suffers from the same flaw as his other conclusory assertion of employment by PAS:  he has failed to plausibly allege that he performed services for PAS (Dkt. No. 40 ¶ 62).  Given the absence of alleged facts establishing that PAS had the "'right to control'" Plaintiff's work, the FAC fails to adequately allege that it was Plaintiff's joint employer.  *Gallagher,* 86 N.E.3d at 502 (quoting *Commodore,* 824 N.E.2d at 456).

Plaintiff fares no better with his bald claim, made in a footnote to his opposition, that he has pled sufficient facts to show that Guardian and PAS were a single integrated enterprise and, therefore, he was employed by both Defendants (Dkt. No. 49 at 8 n.3).  "Massachusetts law regards parent corporations and their subsidiaries as separate entities …."  *Dorn v. Astra U.S., Inc.*, Civ. No. 96-11124-MEL, 1997 WL 258491, at *3 (D. Mass. Apr. 2, 1997).  "The 'integrated enterprise' test is used to determine whether a group of related employers are so interrelated that they should be treated as one employer, often when determining whether to hold a parent corporation liable for violations of a subsidiary."  *Hamilton*, 209 F. Supp. 3d at 392.  "The integrated enterprise test involves four factors:  '(1) interrelation of operations; (2) common

13

management; (3) centralized control of labor relations; and (4) common ownership.'" *Id.*

(quoting *Romano v. U-Haul Int'l,* 233 F.3d 655, 662 (1st Cir. 2000)).  "'[T]he test should be

applied flexibly, placing special emphasis on the control of employment decisions.'" *Burnett v.*

*Ocean Properties, Ltd.*, Nos. 19-2086, 19-2087, 2021 WL 347553, at *5 (1st Cir. Feb. 2, 2021)

(quoting *Torres-Negrón v. Merck & Co., Inc.,* 488 F.3d 34, 42 (1st Cir. 2007)).  The FAC's

allegation that "[u]pon on information and belief, PAS is a subsidiary/affiliate of Guardian,"

without any additional facts describing the relationship between Guardian and PAS vis-à-vis

employment decisions, is plainly insufficient to establish that PAS and Guardian were a single

integrated enterprise for employment purposes (Dkt. No. 40 ¶ 6).

After the conclusory allegations in the FAC are excised, the complaint fails to state a

plausible claim that PAS was Plaintiff's employer under Mass. Gen. Laws ch. 149, § 148B.

Accordingly, PAS's motion to dismiss Count III is allowed.

B.     <u>Counts I & II:  Breach of the Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment</u>[6]

Although the court previously denied Defendants' motion to dismiss Counts I and II, *see*

*Fine,* 450 F. Supp. 3d at 34, 36-37, PAS now contends that the FAC fails to allege sufficient

facts to state claims against it for breach of the covenant of good faith and fair dealing and unjust

enrichment (Dkt. No. 46-1 at 12-15, 21-22; Dkt. No. 50 at 5-8).  Plaintiff responds that PAS has

waived the argument and, if it is not waived, the allegations that specifically identify PAS in

combination with those that describe the acts of "Defendants" adequately support Plaintiff's

---

[6] The parties do not dispute that Plaintiff's status as an independent contractor or an employee is "irrelevant" to Plaintiff's claims under Counts I and II (Dkt. No. 50 at 7).  *See Trent Partners & Assoc., Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 101 & n.18 (D. Mass. 1999) (an implied covenant of good faith and fair dealing protects independent contractors at will and employees-at-will "in situations where the purpose of the termination was to deprive the employee of an identifiable, future benefit due for particular past service").

claims for relief under Counts I and II (Dkt. No. 49 at 6-8).  *See* Fed. R. Civ. P. 8(a).  PAS has

not waived its claims and the defects in the FAC that warrant dismissal of Count III also warrant

dismissal of Counts I and II.

       1.   PAS has not waived its claims.

During the hearing on PAS's motion, Plaintiff argued that PAS's present contentions were

waived because the facts supporting Counts I and II in the FAC are substantially the same as

those alleged in the original complaint.

According to Fed. R. Civ. P. 12(g)(2), which addresses limitations on further Rule 12

motions, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this

rule must not make another motion under this rule raising a defense or objection that was

available to the party but omitted from the earlier motion."  Fed. R. Civ. P. 12(g)(2).  However,

the Rule 12(h)(2) exception to Rule 12(g)(2) permits a party to challenge the sufficiency of the

complaint: "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule

12(c); or (C) at trial."  Fed. R. Civ. P. 12(h)(2).  Because motions for judgment on the pleadings

under Rule 12(c) are an exception to the limits on additional motions that are described in Rule

12(g)(2), and because "[t]he standard of review for a Rule 12(c) motion is synonymous to the

standard of review for a Rule 12(b)(6) motion," *Lu v. Menino*, 98 F. Supp. 3d 85, 93 (D. Mass.

2015) (citing *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir. 2008)), renewed

challenges to amended complaints have been permitted under Rule 12(b)(6) in cases in which an

amended complaint was filed after a motion to dismiss the initial complaint was denied.  *See*

*Sidebotham v. Robison*, 216 F.2d 816, 823 (9th Cir. 1954) ("on filing a third amended complaint

which carried over the causes of action of the second amended complaint [and added a claim],

the appellees were free to challenge the entire new complaint" after the motion to dismiss the

second amended complaint was denied); *Chavez v. Wal-Mart Stores, Inc.,* Case No. CV 13-6429-GHK (PJWx), 2014 WL 12591252, at *1 (C.D. Cal. June 2, 2014) ("While 12(g)(2) prohibits a defendant from bringing successive motions to dismiss the same operative complaint, the law is clear that when an amended complaint is filed, it supersedes the original complaint and is therefore susceptible to a renewed motion to dismiss."); *see also Thayer Corp. v. Reed*, No. 2:10-cv-00423-JAW, 2011 WL 2682723, at *4 (D. Me. July 11, 2011) ("'Rule[ ] 12(h)(2) . . . prolong[s] the life of certain defenses,' and allows the defense of a failure to state a claim on which relief can be granted to be made until trial.") (quoting *Kontrick v. Ryan,* 540 U.S. 443, 459 (2004)).  Rule 12(b)(6) motions are treated differently than the waivable defenses in Fed. R. Civ. P. 12(b)(2) through 12(b)(5) because these motions raise issues that "are more closely enmeshed with the substantive merits of the lawsuit [and] deserve preservation beyond the embryonic stage of litigation." 5C CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1389 (3d ed. 2004).  Because PAS could raise the same claims concerning Counts I and II in a Rule 12(c) motion or even at trial, it conserves judicial resources to consider these issues at this time. *See ACC Bldg. 1, LLC v. Texas, Instruments, Inc.*, 401 F. Supp. 3d 212, 215 (D. Mass. 2019) (considering the defendants' renewed, or second, motion to dismiss, filed in response to an amended complaint notwithstanding the similarities between the original and the amended complaint).

      2.    Plaintiff has not adequately pled claims for breach of the covenant of good faith and fair dealing and unjust enrichment against PAS.

PAS contends that it is entitled to dismissal of Counts I and II because "the [FAC] does not (and cannot in good faith) contain a single allegation relating to any benefits that PAS (not Guardian) purportedly would have owed Plaintiff from future securities sales had his contract with PAS not been terminated" (Dkt. No. 46-1 at 21-22; Dkt. No. 50 at 7).  Plaintiff, on the other

16

hand, argues that dismissal of Counts I and II at this stage of the litigation would be premature (Dkt. No. 49 at 14).  Because the FAC fails to state factual grounds for the claims, Counts I and II will be dismissed.

Viewing the complaint under the plaintiff-favorable standard applicable at this stage of the litigation, Plaintiff has not stated plausible claims for breach of the covenant of good faith and fair dealing or unjust enrichment against PAS.  Both causes of action would require proof that PAS retained commissions that were related to Plaintiff's past service.  *See Koufos v. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 52 (D. Mass. 2013) ("A claim for unjust enrichment requires three elements:  '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value.'") (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 57 (1st Cir. 2009)); *Vonachen v. Comput. Assocs. Int'l, Inc.*, 524 F. Supp. 2d 129, 137 (D. Mass. 2007) ("To advance a claim for breach of the covenant, a Plaintiff must establish that his employment was terminated "without 'good cause' or in 'bad faith,'" and for the purpose of depriving him of benefits to which he is entitled.) (citation omitted).

Although the FAC adequately describes the past services Plaintiff furnished to Guardian that would entitle him to recover damages from Guardian on the theories of breach of the covenant of good faith and fair dealing or unjust enrichment – he sold Guardian and Innovative Underwriters products, thereby earning future renewal commissions (Dkt. No. 40 ¶¶ 10, 13, 14) – there is no comparable description of services Plaintiff alleged provided that would have conferred a benefit on PAS and entitled him to renewal commissions that PAS purportedly retained after his discharge.  Consequently, the FAC does not state plausible claims for relief for

breach of the implied covenant of good faith and fair dealing or unjust enrichment. *Compare Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144, 1152 (1st Cir. 1989) ("The [*Fortune* and *Gram* line of] cases equate an unfair denial of earned commissions with unjust enrichment."); *Suzuki v. Abiomed, Inc.,* Civil Action No. 16-12214-DJC, 2019 WL 109340, at *8 (D. Mass. Jan. 4, 2019) ("Where termination occurs for the purpose of depriving the employee of benefits or compensation due or forthcoming at the time of discharge, the termination is considered to have been rendered in 'bad faith' and the covenant is, therefore, considered to have been breached.") (quoting *Fortune v. Nat'l Cash Register Co.,* 364 N.E.2d 1251, 1257 (Mass. 1977)); *Gram v. Liberty Mut. Ins. Co.,* 429 N.E.2d 21, 22-23 (Mass. 1981) (the plaintiff, an at-will insurance sales representative who was terminated without good cause, could recover for breach of the covenant based on a reasonable expectation of "renewal commissions" stemming from his past sales of the original policies).

Because the FAC failed to allege sufficient facts to support claims against PAS for breach of the covenant of good faith and fair dealing or unjust enrichment, Counts I and II will be dismissed.

V.   CONCLUSION

For the reasons set forth above, PAS's motion to dismiss (Dkt. No. 46) is ALLOWED.

It is so ordered.

Dated:  March 10, 2021                                    /s/ Katherine A. Robertson
                                                          KATHERINE A. ROBERTSON
                                                          U.S. MAGISTRATE JUDGE