UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW FINE,                          )
            Plaintiff,                 )
                                       )
                                       )
        v.                             )        Civil No. 3:19-30067-KAR
                                       )
                                       )
THE GUARDIAN LIFE INSURANCE            )
COMPANY OF AMERICA,                    )
            Defendant.                 )


MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR APPLICATION OF
THE AFTER-ACQUIRED EVIDENCE DOCTRINE
(Dkt. No. 134)

ROBERTSON, U.S.M.J.

Plaintiff Matthew Fine (Fine) was an insurance salesman for defendant The Guardian Life

Insurance Company of America (Guardian).  The court denied Guardian's motion for summary

judgment on the First Count of Fine's amended complaint, which alleges that Guardian violated

the implied contractual covenant of good faith and fair dealing when it failed to pay him renewal

commissions after Guardian terminated its agreement with him without cause (Dkt. No. 120).

Before the court is Guardian's motion to admit after-acquired evidence to limit liability or

damages.  In the alternative, Guardian asks the court to certify the issue to the Massachusetts

Supreme Judicial Court (SJC) (Dkt. No. 134).  For the following reasons, Guardian's motion is

granted in part and denied in part.

I.      Relevant facts[1]

---

[1] The facts are taken principally from the parties' summary judgment submissions.

On or around May 6, 2018, Fine travelled to Washington, D.C., to attend Guardian's annual conference at the Marriott Marquis Washington, D.C. (Marriott).  During the evening of May 6th, Fine and a Guardian colleague had drinks with two women whom they met at the Marriott bar.  The women were not affiliated with Guardian.  At approximately 1:30 a.m. on May 7th, Fine, Suarez, and the two women went to Suarez's hotel room where Fine and one of the women had a sexual encounter in the bathroom.  Fine took photographs of the encounter.

In the early morning hours of May 7th, the Marriott front desk received a report that a guest had been sexually assaulted.  Around 3:30 a.m., Marriott security personnel and a law enforcement officer interviewed Fine about an alleged sexual assault.  Fine told the police that he had photographs showing that the encounter was consensual, but he wanted to consult an attorney before he showed the photographs to the police.  Around 6:00 a.m., Fine called his brother, Randy Fine, who was also a Guardian insurance agent who was attending the conference.  In the presence of Marriott security and the D.C. police, Fine told Randy that the allegation of sexual assault was false and that he had proof on his phone.  At the Marriott's request, Fine then left the hotel.

After being advised of the allegation, Marriott employees got in touch with Guardian employee Neha Kowal, and told her that Fine had been accused of sexual assault.  Kowal notified Guardian's General Counsel and its Senior Security Specialist, Dennis Byrne, of the accusation.  In the morning on May 7th, Marriott security personnel told Kowal and Byrne that the police were called to the hotel because Fine was accused of raping a female hotel guest, a man heard screams coming from the room where the rape allegedly occurred, the alleged victim was taken to the hospital by ambulance for the administration of a rape kit, and Fine had been evicted by Marriott security.  Kowal and Byrne passed along that information to several senior

Guardian employees including Chris Dyrhaug, an executive vice president, who reported it to Deanna Mulligan, Guardian's chief executive officer.

Dyrhaug and Byrne subsequently confirmed to Mulligan what they had been told by Marriott security personnel and told Mulligan that there was a possibility that Fine would be charged with rape.  That afternoon, however, Mulligan learned that Fine would not be the subject of criminal charges.  Sometime on May 7th, Dyrhaug called Randy and told him that Fine's contract with Guardian was going to be terminated.  Randy urged Guardian to hold off on its decision until Guardian had all the facts.  Later that evening, Fine heard rumors that Guardian was going to terminate his Field Representative Agreement (FRA).

Around 11:15 a.m. on May 8th, Fine's attorney, Stuart Sears, informed Dyrhaug by email that he had information that would prove that the allegations against Fine were completely false, that he was in the process of providing the information to law enforcement, and that he wanted the appropriate people at Guardian to have the information before they made a decision about Fine's future.  Thereafter, Guardian's attorney called Sears, who told Guardian's attorney that he had evidence that would exonerate Fine of criminal charges, but he had to provide it to the police before he shared it with Guardian.  After Sears provided the photographs to the police, the police told Sears that Fine would not be charged with a crime, would not be arrested, and that the incident would not be the subject of a report.

Early on May 8th, 2018, Mulligan discussed the matter with members of Guardian's board of directors.  At some point on May 8th, without speaking with or attempting to speak with Fine or Suarez, Guardian decided to terminate Fine's FRA, relying on the contract's two-week notice provision.  During a telephone call in the early evening of May 8th, Dyrhaug notified Fine and Sears that Fine's FRA with Guardian would be terminated because Guardian had "lost faith" in

Fine.  Guardian's May 8, 2018, letter to Fine indicated that his FRA was terminated pursuant to the agreement's fourteen-day notice provision that permitted termination by either party for any reason and without cause.

During his deposition, Fine testified that he brought marijuana gummies from Massachusetts to Washington, D.C., gave gummies to the two women whom he and Suarez met in the Marriott bar and offered them to Suarez, had sex with a married woman who was angry at her husband for cheating on her, took photographs of their sexual encounter, and texted a photograph of the woman's breast to a group of his friends without the woman's permission.  Guardian asks the court to admit this evidence, which it characterizes as after-acquired evidence, to support its contention that it had good cause to terminate Fine's FRA and is not liable to him for commissions on life and disability insurance policies he sold while he was affiliated with Guardian (Dkt. No. 134).  On this basis, Guardian asks to the court to: (1) reconsider its decision denying summary judgment to Guardian; or (2) admit the evidence at trial on the issue of liability and/or to limit damages.[2]  Fine opposes the motion (Dkt. No. 141).

     II.   <u>Analysis</u>

     A.  Reconsideration of the court's summary judgment ruling

Guardian argues that, in denying summary judgment, this court declined to rule on Guardian's argument that after-acquired evidence defeated Fine's claim in the absence of a more "developed record" (Dkt. No. 135 at 9).  In advancing this contention, Guardian has misquoted this court's decision.  In fact, the court declined to consider whether Guardian could rely on so-called after-acquired evidence "in the absence of developed *argument*."  *Fine v. Guardian Life Ins. Co. of*

---

[2] Guardian further requested that, if this court declines to decide whether the after-acquired evidence doctrine applies, the court certify the question to the SJC.  The court has concluded that state court decisions provide sufficient guidance such that certification is not necessary.

*Am.*, Civil No. 3:19-30067-KAR, 2022 WL 673663, at *13 n.12 (D. Mass. Mar. 7, 2022) (emphasis supplied).  There is a material difference in these two terms.

At the summary judgment stage, "[t]he district court is free to disregard arguments that are not adequately developed."  *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999); *see also Mackey v. Town of Tewksbury*, 433 F. Supp. 3d 116, 163 (D. Mass. 2020) ("Defendants' failure to adequately develop the … argument … amounts to a waiver of the argument for purposes of their summary judgment motion;" citing *Higgins*); *Williams v. City of Brockton*, CIVIL ACTION NO. 12-10430-JGD, 2015 WL 13849392, at *2 (D. Mass. Dec. 29, 2015) (the plaintiff waived his argument when he buried it in a footnote; citing *Higgins*). Guardian relegated to a footnote its argument that "[e]vidence acquired following the termination of Fine's agreement lent further support to Guardian's losing faith in Fine and its belief that he had put Guardian's reputation at risk …." (Dkt. No. 87-1 at 20 n.11).  Guardian supported this argument by citing to *Strobeck v. Muggia*, No. 14-P-1299, 2016 WL 320215, at *2-3 (Mass. App. Ct. Jan. 27, 2016), an unpublished decision of the Massachusetts Appeals Court that – although Guardian did not bring this aspect of the case to the court's attention – applied Delaware, rather than Massachusetts, law.  The *Strobeck* court's application of Delaware law to the facts that were before it says absolutely nothing about that court's view of what Massachusetts law was or should be.  When the court investigated the state of the law in Massachusetts, it discovered that the SJC had stated that "[i]n the rare opportunities that [the SJC] and the [Massachusetts] Appeals Court have had to consider the issue of after-acquired evidence in the context of a termination from employment, neither of the courts has adopted, or declined to adopt, this doctrine."  *EventMonitor, Inc. v. Leness*, 44 N.E.3d 848, 851 (Mass. 2016) (citing *Flesner v. Tech. Commc'ns Corp.*, 575 N.E.2d 1107, 1113-14 (Mass. 1991); *Prozinski v.*

*Ne. Real Estate Servs.*, 797 N.E.2d 415, 425-26 (Mass. App. Ct. 2003) (Cypher, J.)).  Guardian neither brought these cases to the court's attention, nor did it advance any argument as to why, in the face of this precedent, the court could or should rely on after-acquired evidence in ruling on Guardian's summary judgment motion.  In these circumstances, the court held that Guardian had waived the argument that it was entitled to rely on after-acquired evidence for purposes of summary judgment.  *See Higgins*, 194 F.3d at 260.

Guardian now asks the court to reconsider this ruling.  "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'"  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).  "To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law."  *Id.*  Guardian has done neither.  First, the evidence Guardian points to was available to it when it filed for summary judgment.  Second, for the reasons set forth above, this court did not commit any manifest error of law when it held that Guardian had waived its reliance on the after-acquired evidence doctrine at the summary judgment stage.  For these reasons, so much of Guardian's motion as seeks reconsideration of the court's ruling denying Guardian's summary judgment motion based on after-acquired evidence is denied.

> B.  Admission of after-acquired evidence at trial.

> > 1.  Legal framework.

"A federal court sitting in diversity … must apply state substantive law."  *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011) (citing *Hoyos v. Telecorp Commc'ns, Inc.*, 488 F.3d 1, 5 (1st Cir. 2007)).  In doing so, a federal district court

> "look[s] to the pronouncements of a state's highest court in order to discern the contours of that state's law' … If the highest court has not spoken directly on the question in issue, [the court] predict[s] 'how that court likely would decide the issue,' looking to the relevant statutory language, analogous decisions of the state supreme court, decisions of the lower state courts, and other reliable sources of authority."

*Id.* (quoting *González Figueroa v. J.C. Penney P.R., Inc.*, 568 F.3d 313, 318 (1st Cir. 2009)).

The federal court's "'obligation to make … an "informed prophecy" is dampened by a concomitant duty to confine [its] forecast "within the narrowest bounds sufficient to permit disposition of the actual case in controversy."'" *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020) (quoting *Nolan v. CN8*, 656 F.3d 71, 76 (1st Cir. 2011)).

When an employee's claim for future compensation follows a discharge without cause, as is the case here, the after-acquired evidence doctrine;

> allows an employer retroactively to characterize a termination as one for cause if the employer shows that: (1) an employee had committed misconduct; (2) the employer learned of the misconduct only after the employee's termination from employment; and (3) had the employer known of the misconduct prior to the termination without cause, the employer instead would have discharged the employee for cause on th[e] basis of that conduct.

*EventMonitor*, 44 N.E.3d at 855 (citing *McDill v. Environamics Corp.*, 757 A.2d 162, 166 (N.H. 2000)). If an employer proves those elements, "[s]ome jurisdictions permit after-acquired evidence to serve as a complete bar to an employee's recovery, while other jurisdictions apply the after-acquired evidence doctrine only to mitigate an employee's damages." *McDill*, 757 A.2d at 166.

2.  Massachusetts courts and the after-acquired evidence doctrine.

The Massachusetts Supreme Judicial Court (SJC), the state's highest court, has not been required to decide whether to adopt the after-acquired evidence doctrine. In *EventMonitor,* the SJC did not address the possible application of the after-acquired evidence doctrine because it

affirmed the lower court's determination that, even if the after-acquired evidence at issue was taken into account, the employee's alleged misconduct would not constitute a material breach of the employment contract and, consequently, would not have justified termination of employment for cause. *See id.,* 44 N.E.3d at 853-55. In *Flesner,* the SJC observed that "even if the defendants [were] correct that they [could] show that their 'after the fact' discovery of legitimate reasons for discharging [the plaintiff] preclude[d] recovery," disputes of fact precluded resolution of that issue on summary judgment. *Id.*, 575 N.E.2d at 1113.

In the court's view, the *Prozinski* case is the most informative of the Massachusetts cases that have addressed whether after-acquired evidence may be considered for purposes of determining whether an employer is obligated by contract principles to pay post-discharge compensation to an employee (or an independent contractor).[3] In *Prozinski,* the plaintiff employee brought suit when his former employer declined to pay him severance benefits in accordance with the terms of his employment agreement. *Id.*, 797 N.E.2d at 417. Plaintiff was discharged for financial misconduct, discrimination, and sexual harassment based on complaints from three female employees. After the plaintiff's employment was terminated, the employer learned that he had allegedly sexually harassed a fourth employee who worked as a receptionist and used the company's computers to distribute pornography to employees and exchange obscene emails with men inside and outside of the office. *See id.* at 417-18.

---

[3] Under Massachusetts law, the implied covenant of good faith and fair dealing protects independent contractors at will and employees at will when a discharge or the termination of an independent contractor agreement deprives an individual of an "identifiable future benefit due for particular past services." *See Fine v. Guardian Life Ins. Co. of Am.*, 450 F. Supp. 3d 20, 28 n.6 (D. Mass. 2020) (quoting *Trent Partners & Assoc., Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 99, 101 & n.18 (D. Mass. 1999)). There remains a dispute between the parties as to whether Fine was an employee of, or an independent contractor with, Guardian. The court's references to an employee's or an employer's rights in this opinion is for ease of reference and is not intended as an indication that the court has a view on Fine's employee/independent contractor status.

8

On cross-motions for summary judgment, the trial court ruled that plaintiff had proved that he was entitled to severance pay under his employment agreement – a payment the employer had not made – and that the employer had not proved its counterclaims of breach of fiduciary duty and fraud.  *Id.* at 418.  On appeal, while agreeing with the trial court that the plaintiff's employment agreement was enforceable and unambiguous as to the severance pay provision, *id.* at 421, the Massachusetts Appeals Court (MAC) held that judgment should not have entered on the plaintiff's breach of contract claim because the employer had asserted the plaintiff's alleged breach of fiduciary duty as a reason for terminating his employment and denying him severance, and "[t]he record …. reflect[ed] a genuine issue of material fact on the question whether [the plaintiff's] conduct amounted to a material breach of his contract … and not simply what the trial judge characterized as 'boorish conduct' and 'sloppy record keeping.'"  *Id.* at 423.

Focusing on the record, the court identified the support for the employer's breach of fiduciary duty claim as including evidence that the plaintiff had knowingly submitted false expense reports; fostered a work environment that was hostile to women; allegedly sexually harassed a receptionist; and used the office computers to distribute obscene emails and pornography.  *Id.* at 423-24.  With respect to the employer's claim that "after-acquired evidence" showed that the plaintiff had materially breached his employment contract, the court stated:

> [i]n the circumstances of this case, where the only damages at issue regard severance pay and there is no live claim of wrongful termination or of breach of an employment contract provision regarding grounds for termination, it does not appear to us to be necessary to rely on the after-acquired evidence doctrine *for [the employer] to introduce admissible evidence gathered in the course of its investigation or discovery on the question of material breach.*

*Id.* at 425-26 (emphasis supplied).  The court explained in a footnote that the after-acquired evidence doctrine would not affect the outcome of the case because the plaintiff either was or

was not entitled to severance.   The damages, therefore, would "not [be] affected by limiting

their assessment to the date of discovery of misconduct."   *Id.* at 425 n.10.

> 3.   The *Prozinski* case and other reliable sources point to the conclusion that,
>      in the circumstances of this case, the SJC would permit the defendant to
>      rely on after-acquired evidence in its defense to liability.

While there are differences between the facts and issues in *Prozinski* and the facts and

issues in this case, the similarities far outweigh the differences.   So far as appears from the

record, in *Prozinski*, the employer had the right to terminate the plaintiff's employment without

cause subject to an obligation to pay severance if the employer discharged the employee within

the first twenty-four months of employment.   *Id.* at 418.   The employer discharged the plaintiff

on the grounds of improper reimbursement requests, financial mismanagement, and complaints

from three female employees about a hostile environment.   Deeming this conduct a breach of the

plaintiff's fiduciary duty to it, the employer declined to pay severance to the plaintiff after his

discharge.   *Id.* at 419.

After the plaintiff was discharged, his employer heard allegations of egregious sexual

harassment from a fourth employee, the receptionist, and that the plaintiff had used the

company's computer system to transmit obscene images to employees and others.   The MAC

held that, in addition to relying on the evidence referenced in the termination letter, the employer

could rely on the evidence that the plaintiff had sexually harassed the receptionist and misused

the company's computer system to support its claim that he had breached his fiduciary

responsibilities to the company, thereby materially breaching the parties' agreement and

excusing the employer from paying severance.   *See id.* at 423-24 ("If the jury found that [the

plaintiff] committed a material breach of the contract, then [the employer] would be entitled to a

judgment dismissing [the plaintiff's] contract claim.").   In other words, while the MAC

disclaimed reliance on the after-acquired evidence doctrine, it deemed evidence the employer acquired after discharge admissible on whether the employer had cause – the plaintiff's preceding breach of fiduciary duty – to avoid paying post-employment severance.

Here, before Guardian ended its agreement with Fine, it knew that a police officer was investigating an accusation of rape lodged against him (although it learned before pulling the trigger that Fine would not be charged), that the Marriott had asked him to leave the hotel, that Fine's attorney had photographs Fine had taken of a sexual encounter, and that addressing the rape accusation had been disruptive and a cause for concern for senior Guardian executives and board members. During discovery, Guardian learned that Fine had given gummies to the woman, that Fine's sexual partner was married and told him she wanted to get back at her husband, and that he had texted an intimate photograph of the woman to a group of his friends without her permission. Guardian seeks to rely on the evidence it had when it discharged Fine and the evidence it learned about Fine's conduct on May 7th to show that it had good cause to terminate Fine's employment and, for this reason, has no obligation to pay him the future commissions he seeks to recover. In other words, Guardian seeks leave to do what the MAC permitted the defendant employer to do in *Prozinski*: rely on evidence it acquired before and after terminating its agreement with the plaintiff to show that it had good cause to do so. While the SJC has not spoken, the MAC's *Prozinski* decision supports a conclusion that, in appropriate circumstances, and with limitations, Massachusetts courts would admit after-acquired evidence of employee misconduct as a defense to a discharged employee's claim to damages for breach of an employment contract, including a breach of the implied contractual duty of good faith and fair dealing.

Other reliable sources also support this position.  As Guardian points out, "[t]he 'overwhelming majority of courts hold that if an employer can demonstrate it would have fired an employee had it known of prior misconduct, then the employee's claim for breach of contract is barred, or, put differently, the prior misconduct excuses the employer's breach.'"  *Weisman v. Barnes Jewish Hosp.*, Case No. 4:19-00075 JAR, 2022 WL 843563, at *4 (E.D. Mo. Mar. 22, 2022) (quoting *O'Day v. McDonnell Douglas Helicopter Co.,* 959 P.2d 792, 795 (Ariz. 1992)); *see also, e.g., Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 339-41 (Tenn. 2005); *McDill*, 757 A.2d at 165-66 (after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge); *but see King v. Recreational Equip., Inc.*, CV 16-27-M-DLC, 2016 WL 8711290, at *1 (D. Mont. Dec. 8, 2016) (under Montana law, an employer cannot rely on reasons justifying a termination unless the employer set those reasons forth in the termination notice); *Lohmann v. Towers, Perrin, Forster & Crosby, Inc.*, Civ. A. No. H-91-3586, 1992 WL 548195, at *1 (S.D. Tex. Oct. 28, 1992) (under Texas law, an employer cannot later justify discharging an employee on grounds that it did not raise at the time of discharge).  And, as Fine acknowledges, "learned treatises Guardian references support application of the after-acquired doctrine to bar liability in a breach of contract case" (Dkt. No. 141 at 17).

Further, the rationale supporting the decisions from other jurisdictions is consistent with the reasoning in *Prozinski*, where the court held that the evidence the employer learned after it discharged the employee "could be found by a fact finder to constitute an act of disloyalty," *Prozinski*, 797 N.E.2d at 424 (citing *Cuddyer v. Stop & Shop Supermarket Co.,* 750 N.E.2d 928, 941 n.21 (Mass. 2001); *Quinn v. Burton*, 81 N.E. 257, 257 (Mass. 1907); *Geller v. Allied-Lyons PLC*, 674 N.E.2d 1334, 1336-37 (Mass. App. Ct. 1997)), that amounted to a preceding material

breach of the parties' agreement by the employee, justifying judgment for the employer on the plaintiff's breach of contract claim. *See id. See, e.g., McDill*, 757 A.2d at 166 (after-acquired evidence of employee misconduct can act as a complete bar to an employer's liability because, under well-established principles of contract law, the prior misconduct of the employee excuses the employer's subsequent breach of the parties' agreement); *O'Day*, 959 P.2d at 795-96 (relying on "the traditional contract approach" in holding that after-acquired evidence of employee misconduct is a defense to a breach of contract action for compensation lost as a result of discharge if the employer can show it would have discharged the employee for cause had it known of the conduct).

For the foregoing reasons, this court finds that the Massachusetts courts would agree with courts in a majority of other jurisdictions that after-acquired evidence may be admissible in a breach of employment contract case when the employer can show that "'(1) the plaintiff was guilty of some misconduct of which the employer was unaware; (2) the misconduct would have justified discharge; and (3) if the employer had known of the misconduct, the employer would have discharged the plaintiff.'" *McDill*, 757 A.2d at 166 (quoting *Gassmann v. Evangelical Lutheran Good Samaritan*, 933 P.2d 743, 745 (Kan. 1997)). "It is for a jury to decide [by a preponderance of the evidence] if the employee's misconduct is of such severity that he or she would have been fired immediately had the employer of it." *Teter*, 181 S.W.3d at 341. At least one court has recognized "the potential danger of allowing employers unrestricted use of [after acquired] evidence." *Lewis v. Fisher Serv. Co.*, 495 S.E.2d 440, 445 (S.C. 1998); *see also Palmquist v. Shinseki*, 729 F. Supp. 2d 425, 431 (D. Me. 2010) (observing that an employer's after acquired evidence could be excluded if the evidence was "so flimsy that its only purpose must be to smear the plaintiff"). On a preliminary basis, at least some, if not all, of Guardian's

after-acquired evidence does not appear so flimsy. A reasonable finder of fact could conclude that aspects of Fine's conduct, while attending Guardian's marquee annual conference, placed his own interests above those of Guardian to an extent that Guardian had reasons amounting to cause to terminate its agreement with Fine based on his conduct. *See Prozinski*, 797 N.E.2d at 424 ("[The employee's] placement of his own interests above those of the company he served could be found by a fact finder to constitute an act of disloyalty."). The *Prozinski* court declined to limit the employer's evidence related to a breach of fiduciary duty to the evidence the employer possessed when it discharged the plaintiff. The additional evidence the court deemed admissible in *Prozinski* was closely related to some of the evidence the employer had amassed before discharging the plaintiff in that the additional evidence, if true, tended to add to the employer's showing that the plaintiff had created a hostile work environment for female employees. *See id.* This court follows suit and holds that, in the limited circumstances of this case, where Guardian's after-acquired evidence will provide additional information about Fine's conduct at Guardian's annual conference, the jurors are entitled to consider after-acquired evidence subject to rulings pursuant to the Federal Rules of Evidence, including Rule 403.

III.    Conclusion

For the foregoing reasons, Defendant's Motion for Application of the After-Acquired Evidence Doctrine (Dkt. No. 134) is granted in part and denied in part.

It is so ordered.

October 27, 2022              /s/ Katherine A. Robertson
                             KATHERINE A. ROBERTSON
                             U.S. MAGISTRATE JUDGE